### In re AUSTRIAN AND GERMAN HOLOCAUST LITIGATION.

Henry Duveen, Martin Lowenberg, Bernard Lee, Lydia Milrod, Semmy Frenkel, Margit Friedlander–Stuart, Isaac Kaufman, Siegfried Buchwalter, Ruth Simon–Hamburger, Marian Salomon Elkan, Roman Neuberger, Paul Schwarz, Nathan Gutman, Elisabeth Bishop, Harold Watman, Ruth Abraham, Michal Schonberger, Rudolfine Schlinger, Ernestine Schwarz, Deutsche Bank Ag, Dresdner Bank Ag, Bayerische Hypo–Und Vereinsbank Ag, Commerzbank Ag, E.On Ag,

Bezalel Kahn, Miriam Deutsch, Ludwig Schaffer, and World Council of Orthodox Jewish Communities, Inc., Petitioners,

v.

United States District Court for the Southern District of New York, Respondent.

Nos. 01–3017, 01–3019, 01–3024 and 01–3025.

United States Court of Appeals, Second Circuit.

Argued May 15, 2001.

Decided May 17, 2001.

Burt Neuborne, (Melvyn I. Weiss, Deborah M. Sturman, Milberg Weiss Bershad

Hynes & Lerach, Elizabeth J. Cabraser, Morris A. Ratner, Caryn Becker, Lieff, Cabraser, Heimann & Bernstein, New York, NY, Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Joseph D. Ament, Michael B. Hyman, Much Shelist Freed Denenberg Ament & Rubenstein, Chicago, IL, Irwin Levin, Richard Shevitz, Cohen & Malad, Indianapolis, IN, Barry A. Fisher, Fleishman, Fisher & Moest, Los Angeles, CA, on the brief), for Petitioners Duveen, Lowenberg, Lee, Milrod, Frenkel, Friedlander–Stuart, Kaufman, Buchwalter, Simon–Hamburger, Elkan, Neuberger, Schwarz, Gutman, and Bishop.

Robert A. Swift, (Kohn Swift & Graf, Philadelphia, PA, Larry Kill, Linda Gerstel, Anderson Kill & Olick, New York, NY, Edward D. Fagan, Livingston, NJ, William Marks, The Marks Law Firm, Bernardsville, NJ, Carey R. D'Avino, New York, NY, Michael Witti, Witti, Neumann & Partners, Munchen, Germany, on the brief), for Petitioners Watman, Abraham, Schonberger, Schlinger, Schwarz.

Stephen A. Whinston, (Edward W. Millstein, Berger & Montague, Philadelphia, PA, Richard Appleby, New York, NY, Mel Urbach, Jersey City, NJ, J. Dennis Faucher, Miller Faucher Cafferty & Wexler, Philadelphia, PA, on the brief), for Petitioners Kahn, Deutsch, Schaffer, and World Council Of Orthodox Jewish Communities, Inc.

Jeffrey Barist, (On the brief: William R. Spiegelberger, Aline Matta, Milbank, Tweed, Hadley & McCloy, New York, NY, for Petitioner Deutsche Bank AG; Philip Allen Lacovara, Thomas M. Mueller, Andrew H. Schapiro, Michael O. Ware, Mayer, Brown & Platt, New York, NY, for Petitioner Bayerische Hypo-und Vereinsbank AG; Kenneth A. Caruso, Robert Y. Lewis, John A. Zaloom, Shaw Pittman, New York, NY, for Petitioner Dresdner Bank AG; Roger M. Witten, John A. Trenor, Wilmer, Cutler & Pickering, Washington, DC, for Petitioner Commerzbank AG; Alan Kanzer, Alston & Bird, New York, NY, for Petitioner E.ON AG).

David Boies, (Ann M. Galvani, Carl J. Nichols, Boies, Schiller & Flexner, Armonk, NY, on the brief), for Respondent.

Lawrence Byrne, (Lance Croffoot–Suede, Sharon M. Sash, Squadron, Ellenoff, Plesent & Sheinfeld, New York, NY), for Unnamed Plaintiff Putative Class Members Gutman et al. in Support of Respondent.

Douglas Hallward–Driemeier, Attorney, Appellate Staff, Civil Division, United States Department of Justice, (Stuart E. Schiffer, Acting Assistant Attorney General, Mark B. Stern, Attorney, Appellate Staff, Civil Division, United States Department of Justice, David J. Anderson, David O. Buchholz, Attorneys, Federal Programs Branch, Washington, DC, on the brief), for Amicus Curiae United States in support of Petitioners.

Schlam, Stone & Dolan, New York, N.Y. (Richard H. Dolan, Bennette D. Kramer, of counsel), filed a brief for Amicus Curiae Individual Claims Committee for the Austrian Bank Holocaust Litigation Settlement in Support of Respondent.

Stroock & Stroock & Lavan, New York, N.Y. (Charles G. Moerdler, Curtis C. Mechling, James A. Shifren, David A. Javdan, Joseph E. Strauss, of counsel), filed a brief for Amici Curiae Bank Austria AG and Creditanstalt AG.

Before OAKES, KEARSE, and CABRANES, Circuit Judges.

PER CURIAM:

The present mandamus petitions center on multi-national efforts to provide restitution and compensation for victims of the

Holocaust, resulting in agreements on July 17, 2000, to which the United States of America and the Federal Republic of Germany were parties (collectively the "Compact"), for, *inter alia,* the creation of the German Foundation "Remembrance, Responsibility, and the Future" (the "German Foundation" or "Foundation"), an extrajudicial entity designed to provide expedited payments to approximately one million persons who have claims of personal injuries and property loss arising from the Holocaust. A total of 10 billion deutsche marks, the equivalent of roughly $4.5 billion, has been committed to the German Foundation by the German government and private German commercial entities for payments in recognition of such claims. Under the Compact, however, no distribution may take place until the attainment of "legal peace," *i.e.,* the final dismissal of pending Holocaust-related litigation against German companies in United States courts and a commitment by the United States to file in any pending or future Holocaust litigation against German companies in a United States court a "Statement of Interest" informing that court that the foreign policy interests of the United States call for the German Foundation to be recognized as the exclusive forum for the resolution of such claims.

The present litigation is a consolidation of putative, uncertified, class actions brought in 1998 and 1999 by Holocaust victims or their heirs asserting slave labor and property loss claims against certain German and Austrian banks. The claims against the Austrian banks were settled pursuant to a March 1999 agreement, which the district court approved in January 2000, *see In re Austrian and German Holocaust Litigation,* 80 F.Supp.2d 164, 180 (S.D.N.Y.2000), *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78, 87 (2d Cir.2001). In October and November

2000, following the July 2000 signing of the Compact and the creation of the Foundation, all but one of the named plaintiffs moved in the district court for an order pursuant to Fed.R.Civ.P. 41(a) allowing them voluntarily to dismiss their claims against the German banks with prejudice, but without prejudice to the rights of any absent putative class members to assert their own claims in any forum. The United States, consistent with its commitment under the Compact, filed with the district court a Statement of Interest stating that the foreign policy interests of the United States call for the Foundation to be recognized as the exclusive forum for the resolution of such claims, and urging dismissal.

The district court, in an order dated March 7, 2001, initially denied the motion, citing three reasons. First, the Foundation had not been fully funded. Second, the absent members of the putative class, in any future effort to pursue their claims, would be faced with a Statement of Interest from the United States urging dismissal. Third, a subclass of plaintiffs comprising absent putative class members who had sued Austrian banks and settled their claims in part by receiving an assignment of those banks' claims against German banks for misappropriation of Austrian bank assets during World War II (the "Assigned Claims"), was not to receive distributions from the Foundation on account of the Assigned Claims. In an order dated March 20, 2001, the court denied reconsideration. The court noted that although its first concern had, by then, been alleviated by completion of the Foundation's funding, the court remained concerned by the prejudice it envisioned with respect to the holders of the Assigned Claims. Accordingly, despite the motions for voluntary dismissal with prejudice to the moving plaintiffs and without prejudice to any absent putative class members, and without

objection by the defendants, the district court refused to dismiss the moving plaintiffs' claims.

The present mandamus petitions were filed by, respectively, plaintiffs Duveen, *et al.*, Watman, *et al.*, and Kahn, *et al.* (collectively "plaintiffs-petitioners"), and defendants Deutsche Bank AG, *et al.* ("German Bank petitioners"), seeking an order of this Court requiring the district court to grant forthwith the plaintiffs' motions for voluntary dismissal. By order dated April 3, 2001, this Court invited the district court to respond, and it has done so through counsel, contending principally that mandamus relief is inappropriate both procedurally because of the availability of other routes to appellate review, and substantively because the court had an obligation to make a searching inquiry into the proposed dismissal and that inquiry led it to conclude that the dismissal would prejudice the absent putative subclass members holding the Assigned Claims. On April 27, we scheduled oral argument on the petitions for May 15.

On May 8, 2001, the district court received a new motion for reconsideration of its order denying the motions to dismiss, supported by declarations of Michael D. Hausfeld, one of the attorneys for the Duveen plaintiffs who is also counsel to certain Central and Eastern European countries' members of the German Foundation's governing board. Declarations by Hausfeld dated May 8 and 9, 2001, stated, *inter alia*, that those representatives

> have committed to *urge* the Foundation to adopt eligibility criteria for payment of Austrian Assigned Claims from the German Foundation property fund. . . .
>
> . . . .
>
> 10. The Central and Eastern European Board Members will *urge* that eligible holders of the Assigned Claims be allowed to present claims for property to the German Foundation Property Claims Panel on the same terms and conditions as any other claimant. They will *urge*, further, that the fact that holders of the Assigned Claims have already received partial payment for such claims under the Austrian bank settlement will not preclude them from seeking additional payments from the German Foundation's Property Claims Panel.
>
> . . . .
>
> 12. The same coalition of Central and Eastern European Foundation representatives plays a similar role with respect to the Austrian Foundation, and will *urge* the adoption of claims criteria which similarly recognize the validity of the Assigned Claims.
>
> . . . .
>
> 18. Plaintiffs' counsel and their clients are making these commitments under the assumption that an order by this District Court granting the prior-filed motions for voluntary dismissal will remove all material conditions for the Bundestag to make a finding of final legal peace so that the German Foundation monies can be authorized to be paid by the close of the present session of the Bundestag.
>
> 19. Given the foregoing, plaintiffs now *urge* the Court to grant the prior-filed motion for voluntary dismissal, but only pursuant to Fed.R.Civ.P. 60(b). If the assumptions on which this motion is made prove to be untrue, plaintiffs will file motions to vacate the orders granting motions for voluntary dismissal. . . .

(Declaration of Michael D. Hausfeld dated May 9, 2001 ("Hausfeld Declaration" or "Declaration"), ¶¶ 8, 10, 12, 18–19 (emphases added).)

The district court held a hearing on the reconsideration motion on May 10. At the hearing, Hausfeld reiterated the representations made in his Declaration. Other attorneys for plaintiffs-petitioners, however, pointed out that the Central and Eastern European representatives discussed by Hausfeld held only five seats on a 27 person German board. Burt Neuborne, an attorney for the Duveen plaintiffs who is also the Foundation board member designated by the United States to represent Holocaust victims, stated that the Board would give a proposal by the Central and Eastern European representatives serious, unbiased, and intense attention; but he stated that he could not predict what the result of that consideration would be. Stephen Whinston, an attorney for the Kahn plaintiffs, emphasized that any distribution by the Foundation to holders of the Assigned Claims on account of those claims would violate existing German law and thus could not be realized without new German legislation. He argued that it would be inappropriate to permit a Rule 60(b) challenge to a judgment of dismissal if the Foundation refuses to allocate money to the Assigned Claims in compliance with existing German law. Jeffrey Barist, speaking for the German Banks, added that, despite the hopes discussed by Hausfeld, the parties had no control over the timing of action to be taken by the German legislature:

> [T]here is an assumption in Mr. Hausfeld's papers ... that the Bundestag will declare legal peace by the close of its present term, which I understand to be June. As your Honor knows, before funds can flow from the foundation to the victims, the German Bundestag must find it to be adequate legal peace. Clearly, it is not for us to direct the parliament of a friendly foreign sovereign state as to its acts and, clearly, there can be no representation made by mere counsel as to what the parliament of Germany is going to do.

> I should note for the record, however, ... it is my understanding that Chancellor Schroeder and the German parliament have made it clear that dismissal of the case as presently before your Honor, which could include the cases in the consolidated complaint as to which voluntary dismissal has been sought, is regarded as a necessary condition to legal peace.

(Hearing Transcript, May 10, 2000 ("Tr."), at 19–20.)

After hearing all the arguments, the district court stated as follows:

> I have carefully considered this application, all of the supporting documentation, and I paid close attention to today's presentations, and I am going to rule from the bench. I find that the recent commitments and adjustments to the Compact as set forth today adequately remove the prejudice to the members of the Austrian Bank Settlement Class. Accordingly, I hereby grant the motion to dismiss the consolidated complaint subject to Federal Rule of Civil Procedure 60(b).

> Now, I will issue a more detailed order and I am keeping in mind a number of the things said here at this hearing and will attempt to address them in the order.

(Tr. 22.) On May 11, 2001, the court issued its written order ("May 11 Order" or "Order"). The Order stated, in pertinent part, that

> [p]laintiffs' dismissal of their claims with prejudice is based on their understanding that: ... (b) the Court's Order granting plaintiffs' motions for voluntary dismissal of the Consolidated Complaint will remove all material obstacles preventing the German Bundestag from

making a finding of final "legal peace" so that the German Foundation monies can be authorized to be paid to claimants by the close of the present session of the Bundestag....

May 11 Order page 4, ¶ 4(b).

7. In renewing their motion to voluntarily dismiss the Consolidated Complaint, plaintiffs rely on the assumptions as set forth above, in the Hausfeld Declaration, and at the Hearing. If any of the assumptions on which this renewed motion is made are not realized or prove to be untrue, plaintiffs have represented that they will file motions, pursuant to Federal Rule of Civil Procedure 60(b), to vacate the orders granting motions for voluntary dismissal, in this case and in related actions involving slave labor and insurance claims. Plaintiffs may also move, pursuant to Federal Rule of Civil Procedure 60(b), to vacate this Order in the event the eligibility criteria of the German Foundation and/or Austrian Foundation are not revised as contemplated in the Hausfeld Declaration.

*Id.* page 6, ¶ 7. The Order stated that "[a]ll claims against all German defendants in the above-captioned actions are dismissed with prejudice as to all plaintiffs who have previously moved to voluntarily dismiss the Consolidated Complaint...." *Id.* pages 6–7, ¶ A. The court stated that it would entertain a motion to transfer to another venue the claim of the one plaintiff who had not sought a voluntary dismissal; the Clerk of the Court was directed to enter a final judgment immediately with respect to the dismissed claims.

■ Despite the May 11 Order's dismissal of all claims asserted by plaintiffs-petitioners, all petitioners contend that their mandamus petitions are not moot, arguing principally that paragraphs 4(b) and 7 of the May 11 Order exceed the authority of the district court. They con-

tend that the court should be directed, at the least, to excise those paragraphs from the Order. Whether by mandamus or by treatment of the mandamus petitions as appeals from the May 11 Order, we agree.

■ A writ of mandamus is available "only to confine an inferior court to a lawful exercise of its prescribed authority, or to compel it to exercise its authority when it is its duty to do so." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 18, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also In re IBM*, 687 F.2d 591, 603 (2d Cir.1982) (granting mandamus where district court had failed for nearly three months to rule on a stipulated motion for dismissal, the legal issues were "clear-cut," and several concerns "emphasize[d] the importance of a prompt disposition of th[e] matter and of the litigation"). Further, mandamus is an extraordinary remedy, and the writ normally is not to be granted if the relief sought could be obtained by means of a direct appeal. *See, e.g., Helstoski v. Meanor*, 442 U.S. 500, 505–08, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). An order that is beyond the scope of the district court's authority is of course normally remediable through a direct appeal.

■ As a procedural matter, the district court's May 11 Order appears to be a final order from which an appeal could be taken; and arguably the issuance of that order makes consideration of the petition for mandamus inappropriate. In an ordinary case, if a party sought mandamus to compel the district court to approve an unopposed attempt at voluntary dismissal of the action and the court, prior to argument on the mandamus petition, entered a final judgment dismissing the action, we would likely dismiss the petition as moot, either because all of the relief sought had been

granted or because any perceived error in the dismissal could be challenged by an appeal from the judgment. *See, e.g., National Equipment Rental Ltd. v. Mercury Typesetting Co.,* 323 F.2d 784, 786 (2d Cir.1963); *see generally Bridge C.A.T. Scan Associates v. Technicare Corp.,* 710 F.2d 940, 944 (2d Cir.1983) (court normally does not treat premature appeals as requests for mandamus). We will, however, depart from our normal practice where there is a strong public interest in expeditiously deciding the issues presented and a direct appeal would occasion inappropriate delay, *see, e.g., In re Federal Communications Commission,* 217 F.3d 125, 133–34 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 606, 148 L.Ed.2d 518 (2000), or there has already been undue delay, *see, e.g., Corcoran v. Ardra Insurance Co.,* 842 F.2d 31, 35 (2d Cir.1988) (treating improvidently filed appeal as a petition for mandamus). These criteria for either mandamus or treatment of the petitions as appeals are plainly met here.

Voluntary dismissals were first requested in October 2000. A ruling on the dismissal motions was delayed by the court's order dated October 27, 2000, requiring that absent class members be given notice of the proposed dismissals. A ruling on those motions was also delayed by, *inter alia,* the district court's appointment, also on October 27, of a special master to assess whether the proposed dismissals were designed for the private benefit of the plaintiffs or their attorneys, whether dismissals would disadvantage absent class members, and whether the motions were the result of any collusive action between the plaintiffs and the defendants. The special master's report, dated December 28, 2000, concluded that although there might be some disadvantages to absent class members from being required to pursue their claims through the Foundation, the disadvantages were outweighed by the

benefits to be gained from dismissals. He found that there was no evidence that the dismissals were sought for the private benefit of the named plaintiffs and their attorneys to the detriment of absent putative class members, and no evidence of any collusion. By order dated January 29, 2001, the court then posed a number of questions to the parties concerning the standards, processing mechanisms, auditing procedures, etc., to be used by the Foundation in making distributions. We imply no criticism of the district court's prompt attempt to assure itself that the dismissals were not collusive or of its concern for absent putative class members; we note only that these actions consumed a number of months before the March 2001 ruling on the October and November motions to dismiss. We also note that if we denied mandamus and declined to treat these petitions as appeals from the May 11 Order, leaving the parties to file new notices of appeal from that Order, additional time would be consumed before the May 11 Order would be appropriately amended to delete the provisions that suggest action by the district court that is beyond its authority. Further delay in these judicial proceedings is to be avoided. Survivors of the Holocaust are elderly; the Duveen petitioners estimate that more than 1,000 potential beneficiaries of the German Foundation die each month. Accordingly, we proceed to the merits.

 Under Article III of the Constitution of the United States, the province of the Judicial Branch of the federal government is the adjudication of the rights of the parties to cases or controversies under the applicable laws. The conduct of foreign relations is committed largely to the Executive Branch, with power in the Legislative Branch to, *inter alia,* ratify treaties with foreign sovereigns. The doctrine of separation of powers prohibits the fed-

eral courts from excursions into areas committed to the Executive Branch or the Legislative Branch. Given that separation of powers, "the political-question doctrine restrains courts from reviewing an exercise of foreign policy judgment by the coordinate political branch to which authority to make that judgment has been 'constitutional[ly] commit[ted]'." *Goldwater v. Carter*, 444 U.S. 996, 1006–07, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (Brennan, J., dissenting (quoting *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962))). It is thus beyond the authority of the courts to interfere with the Executive Branch's foreign policy judgments. *See, e.g., First National City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 766, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (" 'The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'—departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision.' " (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918))).

In light of these constraints, we have considerable difficulty with the two portions of the May 11 Order that are challenged by petitioners, to wit, part (b) of paragraph 4, and all of paragraph 7. As quoted above, paragraph 4(b) expresses an understanding that the Order "will remove all material obstacles preventing the German Bundestag from making a finding of final 'legal peace' so that the German Foundation monies can be authorized to be paid to claimants by the close of the present session of the Bundestag." Order page 4, ¶ 4(b). Paragraph 4(b) seemingly requires the German legislature to make a finding of legal peace and to do so before its summer recess. It would be beyond the authority of the court so to trammel on

the prerogatives of a legislature in the United States. Much less does the court have the power to require such actions of the legislature of a foreign sovereign.

As to paragraph 7 of the May 11 Order, we have several difficulties. To begin with, its first and second sentences incorporate by reference "assumptions" that are ill-defined and hence puzzling. Although the initial reference is to "the assumptions as set forth above, in the Hausfeld Declaration, and at the Hearing," it is not clear, for example, what parts of the Hausfeld Declaration the court views as assumptions; that word is used late in the Declaration, but it is hardly clear that the court did not refer to other parts of the Declaration as well. It is even less clear what assumptions "at the Hearing" are referenced. At the May 10 hearing, after Hausfeld described what the Central and Eastern European representatives would "urge," speaker after speaker emphasized that there could be no guarantee that the urgings of those five representatives would hold sway with a board that numbered 27, or that the German legislature would act within the hoped-for timetable, or that the German legislature would change the law. The court at the hearing seemed to indicate that it understood that there were no guarantees that the changes in eligibility criteria desired by the court could or would be implemented by those having the power to make such changes. Thus, the indication in the second sentence of paragraph 7 that a Rule 60(b) motion would be forthcoming "[i]f any of the assumptions on which this renewed motion is made are not realized or prove to be untrue," *id.* page 6, ¶ 7, rests on quicksand.

■ Most importantly, the last sentence of paragraph 7 states that plaintiffs may make a Rule 60(b) motion to vacate the Order "in the event the eligibility criteria

of the German Foundation and/or Austrian Foundation *are not revised* as contemplated in the Hausfeld Declaration." *Id.* (emphasis added). Even if we read the Hausfeld Declaration as giving any assurance that eligibility criteria would actually be revised, which we do not, this provision takes the court well beyond the bounds of its authority, for it is plain from the Compact that any decision as to the eligibility criteria is governed by German law. And as the parties reminded the court at the May 10 hearing, under current German law the distributions with which the district court is concerned are not permitted, and action by the German legislature would be needed in order to permit them. The last sentence of paragraph 7 appears to indicate that if the German legislature failed to change German law, the district court could or would vacate these dismissals. It is not the office of the court, however, to decide what legislation should be enacted; and the refusal of a legislature, within the scope of its own authority, to enact or change a law is not a valid ground for vacatur of a final judgment.

It is of course true under our federal jurisprudence that any final judgment may be the subject of a motion to vacate pursuant to Rule 60(b)—a motion whose pendency, however, does not alter the judgment's finality. *See* Fed.R.Civ.P. 60(b). At oral argument, counsel for the district court stated that in the May 11 Order's references to Rule 60(b), "[t]he court is not reserving any *sua sponte* power" to vacate the judgment and that the references to that Rule are mere "surplusage." Yet the Order's express reference to Rule 60(b) appears to extend an invitation for a motion to vacate, and to indicate that the court would welcome such a motion and rule on it favorably. Given the absence of authority in the judiciary to dictate to legislatures what laws shall be passed, we conclude that paragraph 7 should be deleted from the Order.

The petitions for a writ of mandamus with respect to the motions for dismissal are granted. The district court is instructed to enter forthwith an amended judgment that (1) omits part (b) of paragraph 4 of the May 11 Order (and re-letters the succeeding parts of that paragraph as necessary), and (2) omits the paragraph 7 of that Order.

We note that certain petitioners have also asked that the matter be remanded to a different judge. Only a ministerial act is required for the amendment of the judgment on remand, and we decline to remand to a different judge. We also note that certain petitioners filed, in addition to their mandamus petitions, notices of appeal from the district court's March orders denying dismissal (Nos. 01–7289 and 01–7321). In light of the district court's May 11 Order and this Court's issuance of mandamus, we regard those appeals as moot, and they are dismissed.

The mandate shall issue forthwith.