UKRAINIAN NATIONAL ASSOCIATION OF JEWISH FORMER PRISONERS OF CONCENTRATION CAMPS & GHETTOS

Association of Victims of Nazi Persecution (Bundesverband Informationa UND Beratung Für NS–Verfolgte)

International Movement of Former Juvenile Nazi Prisoners

Association of Liberated Prisoners in the Czech Republic

Ukrainian Organization of Anti–Fascist Freedom Fighters

Polish American Congress

Ukrainian Association of Nazi Victims and Prisoners on behalf of themselves and all others similarly situated, Plaintiffs,

v.

UNITED STATES, Defendant.

No. CV 01–6933.

United States District Court, E.D. New York.

Oct. 19, 2001.

Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Alexander E. Barnett, Cohen, Milstein, Hausfeld & Toll, New York City, for Plaintiff.

### PRELIMINARY MEMORANDUM AND PRELIMINARY ORDER

WEINSTEIN, Senior District Judge.

An order to show cause and a temporary restraining order are sought by plaintiffs who claim that the German Foundation "Remembrance, Responsibility and Future" ("Foundation"), organized under the laws of the Federal Republic of Germany ("Germany"), charged with distributing some $5 billion contributed by Germany and German economic entities for distribution to slave laborers and other victims of Nazi Germany and its corporations, is depriving the plaintiffs and others of their rightful compensation. Grave charges are made that those responsible for plaintiffs' injuries may be misusing the Foundation in violation of their fiduciary obligations, thus victimizing plaintiffs yet again. The defendant is the United States. It is plaintiffs' theory that the United States guaranteed that the Foundation would be properly administered for the benefit of the Nazi's victims.

### I. Introduction.

The case arguably will be controlled by *Duveen v. United States District Court for the Southern District of New York (In re Austrian, German Holocaust Litigation)*, 250 F.3d 156 (2d Cir.2001) (*Holocaust* case). That opinion determined that the Foundation, Germany, and German entities had "bought peace" as certified by a final judgement dismissing class actions, and that the trial court could not invite an attack on that judgement by way of a Rule 60(b) Federal Rules of Civil Procedure motion. No review of Foundation activity by an American court has been authorized by Germany or by the United States. Plaintiffs contend that the Foundation's prejudicial conduct can be challenged by enforcing a guarantee undertaken by the United States.

The court of appeals decision in the *Holocaust* case appears to imply that a guarantee, if there was one, was provided by the United States in connection with the conduct of our government's and Germany's foreign relations. The court of appeals rejected attempts by the district court to require protections for beneficiaries of the Foundation; it found these interventions an impingement on political and international aspects of United States policy.

It is possible that any future decision by the court of appeals for the Second Circuit would reject the instant suit as unfounded in substantive law as well as beyond the purview of United States courts. There may be no jurisdiction (competence) in a United States district court for this kind of litigation against the United States. The representative chosen by the United States to serve on the Board of Trustees of the Foundation (the "Board") is not alleged to be an agent or employee of the United States. References by the court of appeals in the *Holocaust* case to the foreign policy implications of the Foundation's work may require characterization of the plaintiffs' complaint as raising a political issue beyond the competence of an Article III judge. A separation of powers argument might preclude exercise of judicial power.

Organization of the Foundation and its financing constituted a joint United States—German attempt to resolve longstanding disputes about the costs of Nazi German and German enterprise atrocities, and post-Nazi German attempts to compensate for them and then move forward without a continuing burden on the two countries' relationship. Interference by a United States district court, even were it constitutionally or statutorily authorized, might be imprudent.

There is a question with respect to whether this case should be reassigned to another judge of this court, or venue transferred to another district as more related. *See, e.g., Duveen v. U.S. Dist. Court for the S. Dist. of N.Y. (In re Austrian, German Holocaust Litig.)*, 250 F.3d 156 (2d Cir. 2001); *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.2001); *In re Austrian and German Bank Litig.*, 2001 WL 1150341 (S.D.N.Y. Sept.28, 2001) (Kram, J.); *In re Holocaust Victim Assets Litig.*, 2001 WL 419967 (E.D.N.Y. Apr.4, 2001) (Korman, J., consolidation of five cases, two of which were originally assigned to Bartels, J.); *In re Austrian and German Bank Litig.*, 2001 WL 228107 (S.D.N.Y. Mar.8, 2001) (Kram, J.); *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164 (S.D.N.Y.2000) (Kram, J.); *Winters v. Assicurazioni*, 2000 WL 1858482 (S.D.N.Y. Dec.17, 2000) (Mukasey, J.); *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429 (D.N.J.2000) (Bassler, J.); *Matviivna v. Commerzbank, AG*, 00 CV 1287 (S.D.N.Y. filed Feb. 22, 2000) (Preska, J.); *Iwanowa v. Ford Motor Co.*, 67 F.Supp.2d 424 (D.N.J.1999) (Greenaway, J.); *Burger–Fischer v. Degussa*, 65 F.Supp.2d 248 (D.N.J.1999) (Debevoise, J.); *Staniszewski v. Bayer AG*, 99 CV 4938 (N.D. Cal. filed Nov. 15, 1999) (Alsup, J.); *Fueloep–Miller v. Deutsche Bank AG*, 99 CV 4514 (N.D. Cal. removed to federal court Oct. 8, 1999) (Chesney, J., reassigned to Illston, J.); *Delakowski v. Federal Republic of Germany*, 99 CV 6375 (E.D.N.Y. filed Oct. 5, 1999) (Korman, J.); *Suvarov v. Federal Republic of Germany*, 99 CV 3964 (D.N.J. filed Aug. 20, 1999) (Barry, J., reassigned to Hochberg, J.); *Guminsky v. Siemens AG*, 99 CV 4671 (E.D.N.Y. filed Aug. 11, 1999) (Glasser, J., reassigned to Dearie, J.); *Kardiasmenos v. Siemens AG*, 99 CV 1955 (D. Md. filed June 30, 1999) (Legg, J.); *Zaitseva v. Siemens AG*, 99 CV 4318 (S.D.N.Y. filed June 15, 1999) (Chin, J.); *Grossman v. Bayer AG*, 99 CV 2270 (D.N.J. filed May 17, 1999) (Bassler, J.); *Opatowski v. Adam Opel*, 99 CV 2228 (D.N.J. filed May 13, 1999) (Hochberg, J.); *Feuer v. Bayer AG*, 99 CV 2210 (D.N.J. filed May 13, 1999) (Bassler, J.); *Michaels v. Allianz Lebensversicherungs AG*, 99 CV 2113 (N.D. Cal. filed May 5, 1999) (Legge, J.) *Spitzer v. Holzmann AG*, 99 CV 3285 (S.D.N.Y. filed May 5, 1999) (Chin, J.); *Snopczyk v. Volkswagen AG*, 99 CV 0472 (E.D. Wis. filed May 5, 1999) (Clevert, J.); *Harmat v. Siemens AG*, 99 CV 2528 (E.D.N.Y. filed May 4, 1999) (Glasser, J.); *Polgar v. DaimlerChrysler AG*, 99 CV 2527 (E.D.N.Y. filed May 4, 1999) (Glasser, J.); *Hirsz v. Continental AG*, 99 CV 1892 (D.N.J. filed Apr. 26, 1999) (Wolin, J.); *Koziarski v. DaimlerChrysler AG*, 99 CV 2240 (E.D.N.Y. filed Apr. 20, 1999) (Glasser, J.); *Chmieleweska v. Siemens AG*, 99 CV 2238 (E.D.N.Y. filed Apr. 20, 1999) (Glasser, J.); *Edwards v. Siemens AG*, 99 CV 2125 (E.D.N.Y. filed Apr. 14, 1999) (Glasser, J.); *Lichtag v. thyssen Krupp AG*, 99 CV 2124 (E.D.N.Y. filed Apr. 14, 1999) (Glasser, J.); *Honzatko v. Volkswagen AG*, 99 CV 2124 (E.D.N.Y. filed Apr. 14, 1999) (Glasser, J.); *Simon Wiesenthal Center v. Deutsche Bank AG*, 99 CV 02503 (N.D. Cal. removed to federal court Mar. 31, 1999) (Illston, J.); *Nittenberg v. Bayerische Motoren Werke AG*, 99 CV 756 (D.N.J. filed Feb. 19, 1999) (Bissell, J.); *Kor v. Bayer AG*, 99 CV 0036 (S.D. Ind. filed Feb. 19, 1999) (McKinney, J.); *Solarczyk v. Bayer AG*, 99 CV 392 (D.N.J. filed Jan. 28, 1999) (Bassler, J.); *Kempler v. DaimlerChrysler AG*, 99 CV 418 (D.N.J. filed Jan. 28, 1999) (Barry, J., transferred to Hochberg, J.); *Blau v. Ford Motor Co.*, 99 CV 0316 (E.D.N.Y. filed Jan. 15, 1999) (Glasser, J., transferred to Gleeson, J.); *Greenspan v. Dynamit Nobel AG*, 99 CV 385 (D.N.J. filed Jan. 8, 1999) (Lechner, J., transferred to Hochberg, J.); *Stern v. Heinkel Holding GmbH*, 98 CV 5671 (D.N.J. filed Dec. 11, 1998) (Simandle, J.);

Spitzer v. Bayerische Motorenwerke, 98 CV 5247 (D.N.J. filed Nov. 19, 1998) (Greenaway, J.); Gluck v. AGFA–Gevaert AG, 98 CV 5248 (D.N.J. filed November 19, 1998) (Greenaway, J.); Bressler v. Phillip Holzmann, 98 CV 6335 (E.D.N.Y. filed Oct. 16, 1998) (Glasser, J.); Katz v. Wurttembergische Metallwarenfabrik AG, 98 CV 6054 (E.D.N.Y. filed Oct. 2, 1998) (Glasser, J.); Kohn v. Diehl GmbH & Co., 98 CV 4542 (D.N.J. filed Sept. 30, 1998) (Greenaway, J.); Klein v. Siemens AG, 98 CV 4468 (D.N.J. filed Sept 24, 1998) (Debevoise, J.); Jacobowitz v. Reinmetall AG, 98 CV 4428 (D.N.J. filed Sept. 22, 1998) (Greenaway, J.); Grosz v. AEG Aktiengesellschaft, 98 CV 4379 (D.N.J. filed Sept. 11, 1998) (Greenaway J., reassigned to Barry, J., reassigned to Hochberg, J.); Anolik v. Fried, Krupp AG, 98 CV 4379 (D.N.J. filed Sept. 11, 1998) (Greenaway, J., reassigned to Bassler, J.); Hirsch v. Fried, Krupp AG, 98 CV 4280 (D.N.J. filed Sept. 11, 1998) (Greenaway, J.); Lichtman v. Siemens AG, 98 CV 4254 (D.N.J. filed Sept. 9, 1998) (Debevoise, J.); Gross v. Volkswagen AG, 98 CV 4104 (D.N.J. filed Aug. 31, 1998) (Greenaway, J., reassigned to Bissell, J.); Pollack v. Siemans AG, 98 CV 5499 (E.D.N.Y. filed Aug. 30, 1998) (Glasser, J.); Klein Stahl v. Victoria Holding AG, 98 CV 3490 (N.D.Cal. removed to federal court May 6, 1998) (Tevrizian, J.); Klein v. Riunione Adriatica di Sicurta S.p.A., BC 201983 (Super. Ct. of Calif., filed Dec. 8, 1998) (Otero, J.); Nacher v. Dresden Bank AG, 94 CV 10193 (N.Y. Sup.Ct. filed May 16, 1994) (Golia, J.).

The difficulty in providing a fair method of distributing funds, finding the persons entitled to payment, and ensuring that beneficiaries receive compensation promptly, before they die, is illustrated by the two volume Special Master's Proposed Plan of Allocation and Distribution of Settlement Proceeds in another holocaust case. See In re Holocaust Victims Assets Litig., No. CV 96–4849 (E.D.N.Y. Sept. 11, 2000) (Korman, J.) (report of Judah Gribetz, Special Master), approved, In re Holocaust Victim Assets Litig., 2000 WL 33241660 (E.D.N.Y. Nov.22, 2000). Some restraint on the part of American courts is called for when they are asked, in effect, to supervise an entity such as the Foundation; executive, legislative, and media oversight of institutions administering funds for holocaust victims are not so limited.

Before ruling on the request for an order to show cause and a temporary restraining order, three preliminary points should be made: 1) the attorneys for plaintiffs are acting within the bounds of their ethical obligations in taking steps they deem appropriate to protect their clients' interests in an action which may be authorized by law in this unique legal-factual setting; 2) the complaints of the plaintiffs about improper administration of the Foundation seem, on their face, and assuming for the purpose of this motion only, their truth, to be substantial and cause for concern; and 3) the Foundation has a large Board of Trustees representing many of the 40 or so countries whose citizens are intended to be beneficiaries; a member of the Board is a United States appointee who is in a position to respond to plaintiffs' complaints by explanations and by appropriate action within the Board. See, Otto Lambsdorff, Speech before the German Bundestag (May 30, 2001), at http://eng.bundesregierung.de/dokumente/Rede/ix 43062.htm (last visited Oct. 18, 2001) (The "United States appointment to the Foundation's Board of Trustees has proven to be a particularly fortunate move."). We turn to each of these preliminary matters.

II. Ethical Obligations of Plaintiffs' Attorneys.

"A lawyer should represent a client zealously within the bounds of the law." ABA

Model Code of Professional Ethics Canon 7. *See also, e.g.,* Stephen Gillers & Roy D. Simons, *Regulation of Lawyers: Statutes and Standards* (2000) (texts of relevant ethical codes); Monroe H. Freedman, *Understanding Lawyers' Ethics* 65 (1990); L. Ray Patterson, *Legal Ethics and the Lawyer's Duty of Loyalty,* 29 Emory L.J. 909, 918, 947 (1980) ("the prevailing notion among lawyers seems to be that the lawyers' duty of loyalty to the client is the first, the foremost, and on occasion, the only duty of the lawyer"); Richard A. Matasar, *The Pain of Moral Lawyering,* 75 Iowa L.Rev. 975 (1990) (a lawyer/advocate must resolve doubts about law in favor of the client's interests). In a case as important as the present one, it is the duty of the lawyer to exercise discretion and to "urge any permissible construction of the law favorable to [the] client ... if the position ... is supported by a good faith argument for an extension, modification, or reversal of the law," so long as the position is not frivolous. ABA Model Code of Professional Responsibility, Ethical Consideration 3.1 (meritorious claims distinguished from frivolous contentions); Rule 11(b), Fed.R.Civ.P. (Claims "are warranted by ... a nonfrivolous argument for the ... modification or reversal of existing law or the establishment of new law."). Here the stakes for the clients are enormous, the law and its application to the facts are unprecedented, and the decision in the *Holocaust* case has not been reviewed by the Supreme Court or adopted by another Circuit. Commencement of this law suit can not be characterized as "frivolous" or "outside the bounds of the law" or of ethics.

III. Complaint of Plaintiffs.

The complaint, buttressed by extensive exhibits, provides details of the following Foundation alleged improprieties, among others:

1) The German banks which were obligated to contribute to the Foundation's funds are administering much of the finances of the Foundation, in violation of basic conflict of interest principles, to their own excessive enrichment and to the detriment of beneficiaries.

2) Interest which should have accrued to the benefit of the Foundation and its beneficiaries is being diverted and improperly retained by German entities.

3) Voluntary contributions to the funds of the Foundation are being improperly credited to offset the obligations of German entities.

4) Instead of being transparent as required, the activities of the Foundation are conducted in secret and inquiries from properly interested persons are ignored.

5) Required contributions are being delayed without justification.

6) The claims process has been improperly delayed and inadequately funded by the Foundation so that many rightful claimants will not be in a position to make timely claims.

7) Such inappropriate conduct has already cost victims entitled to compensation hundreds of millions of dollars in potential relief.

It is plaintiffs' contention that these and other improper actions and failures to act constitute a violation of the terms of the Agreement between the Government of the Federal Republic of Germany and the Government of the United States of America Concerning the Foundation "Remembrance, Responsibility, and Future"; that the Agreement was in effect a guarantee by the United States and others inducing plaintiffs and potential beneficiaries to settle the *Holocaust* and related cases; that failure of the United States to object to breaches by the German entities and the Foundation, and the continuation by the United States of its practice of issuing statements of interest to block actions by

plaintiffs and potential beneficiaries in United States courts, constitute a violation of fiduciary obligations assumed by the United States in connection with the Agreement; and that the continuing breach of the guarantees of and by the United States requires prompt injunctive relief.

## IV. Authority of Members of the Board.

The German Federal Republic law on the Creation of a Foundation, "'Remembrance, Responsibility and Future'" (the "Act") entered into force on August 12, 2000, BGBL.2000 I 1263, and was amended on August 4, 2001, BGBL.2001 I 2036. In its preamble it states, after reviewing the history of forced and slave laborers of German enterprises under the Nazis:

The German Bundestag presumes that this Law, the German–U.S. intergovernmental agreement, the accompanying statements of the U.S. Government as well as the Joint Declaration by all parties to the negotiations provide adequate legal security for German enterprises and the Federal Republic of Germany, especially in the United States of America.

*Id.*

A person is to be named by the government of the United States to the 27 member Board of Trustees. *Id.* at § 5(1)(9). A Board of Directors is provided to control "the day-to-day business of the Foundation." *Id.* at § 6(3). The Foundation is first "subject to legal oversight by the [German] Federal Ministry of Finance" and subsequently by the "[German] Federal Ministry for Foreign Affairs." *Id.* at § 8(1). It is also subject to being audited by the "[German] Federal Court of Audit" and the "[German] Federal Office for the Settlement of Open Property." *Id.* at § 8(3). Details on potential beneficiaries by class are specified. *Id.* at § 9 (Use of Foundation Resources); § 11 (Eligible Persons). An "appeals process" is to be created by "partner organizations" "subject to no outside instruction." *Id.* at § 19. No appeals or oversight process mentioned in the Act is being utilized or relied upon in the present suit.

There is no point in reviewing the rest of the Act, except to say that it does not provide for legal review of the Foundation's actions by any United States court. Even if review by some sort of appeal in Germany is possible, the Act does not authorize litigation in the United States.

None of the supporting documents leading up to creation of the Foundation, or since, envisage suits in the United States. *See, e.g.,* Joint Statement [of governments and private organizations] on Occasion of the Final Plenary Meeting Concluding International Talks on the Preparation of the Foundation "Remembrance, Responsibility, and Future" at 4 ("Recognizing the Foundation to be the exclusive remedy and forum for the resolution of all claims"); *id.* at 5 ("tag-along" future cases are to be dismissed "with prejudice"); Agreement between the Government of the Federal Republic of Germany and the Government of the United States of America Concerning the Foundation "Remembrance, Responsibility, and Future" (July 17, 2000) ("both parties desire all-embracing and enduring legal peace to advance their foreign policy interests"); *id.* art. 1, § 3 ("The Federal Republic of Germany assures that the Foundation will be subject to legal supervision by a German governmental authority; any person may request that the German governmental authority take measures to ensure compliance with the legal requirements of the Foundation."); *id.* art. 2, § 1 ("it would be in the foreign policy interests of the United States for the Foundation to be the exclusive remedy and forum for resolving [claims]").

## V. Conclusion.

The request for an order to show cause is denied. The parties may move for an injunction, to dismiss, to reassign the case within this court, to transfer venue, or for other appropriate relief.

Any representative of the Foundation or member of its Board is free to respond to the plaintiffs' complaints, without conceding that this court has any personal jurisdiction or competence to affect the Foundation, members of the Board or its agents.

The plaintiffs on or before October 23, 2001, shall send to each group of attorneys listed in *Duveen v. United States District Court for the Southern District of New York (In re Austrian, German Holocaust Litigation)*, 250 F.3d 156 (2d Cir.2001), the United States Attorney for the Eastern District of New York, and any member of the Board designated by the United States, by fax or express mail: 1) a copy of the papers filed in this proceeding and 2) this preliminary memorandum and preliminary order. Such delivery or its acceptance shall not constitute service for purposes of obtaining jurisdiction over any person to whom notice is given or over a client of that person.

Any papers filed in relation to this matter shall be served on plaintiffs' attorneys, the United States Attorney, persons to whom papers were sent by plaintiffs in accordance with the immediately preceding paragraph, and to the court, by November 5, 2001. Any person may respond to filed papers by November 12, 2001. Any motions or oral statements will be heard on November 19 at 10:00 A.M. in courtroom 10 of this courthouse. Filing or delivery of any papers does not constitute a waiver of any rights, nor is it an appearance for any purpose, nor does it grant the court personal jurisdiction or competence.

SO ORDERED