909 F.2d 259
 1991 A.M.C. 386
 UNITED STATES of America for the Use of VALDERS STONE &
MARBLE, INCORPORATED, a Wisconsin Corporation,
Plaintiff-Appellee/Cross-Appellant,
v.
C-WAY CONSTRUCTION COMPANY, a Michigan Corporation;
American Casualty Company of Reading,
Pennsylvania, a Pennsylvania
Corporation,
Defendants-
Appellees/Cross-Appellees,
and
Selvick Marine Towing Company, a Wisconsin Corporation,
Intervening Defendant-Appellant/Cross-Appellee.
 Nos. 89-2747, 89-2862.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 10, 1990.
Decided Aug. 3, 1990.
 
 Paul A. Rake and Sherry L. Clarke, Eichhorn, Eichhorn & Link, Hammond, Ind., for plaintiff-appellee.
 Peter L. Gustafson, David Green, and Jeff Birkhold, Warner, Norcross & Judd, Grand Rapids, Mich., for defendants-appellees.
 Harold L. Witsaman, Ray, Robinson, Hanninen & Carle, Chicago, Ill., and Anthony DeBonis, Jr., Smith & DeBonis, East Chicago, Ind., for intervenor-appellant.
 Before CUDAHY, COFFEY and MANION, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 C-Way Construction Company was the contractor for a federal marine construction project in Indiana. American Casualty Company provided C-Way's payment bond pursuant to the requirements of the Miller Act, 40 U.S.C. Sec. 270a et seq. C-Way entered into a purchase order agreement on August 20, 1984, with 4-X Corporation for the provision of stone. Before the stone shipment was completed, Valders Stone & Marble bought out 4-X (which had become insolvent) and assumed certain of its obligations and liabilities by means of a document dated March 14, 1985. One of the obligations allegedly assumed by Valders pursuant to the 4-X assignment was the C-Way purchase order.[1] C-Way hired a barge from Selvick Marine Towing Company[2] to transport the stone. The barge provided by Selvick was insured by St. Paul Fire & Marine Insurance Company. Valders contracted with Rusty Strauss & Son Excavating to load the stone onto the barge. The barge suffered damage allegedly as a result of Strauss's negligent loading.[3]
 
 
 2
 This case originated when C-Way refused to pay Valders for the stone, claiming a setoff due to its obligation to compensate Selvick for the damage done to the barge.[4] Valders brought suit on the payment bond against C-Way pursuant to the provisions of 40 U.S.C. section 270b. The parties agreed to try the case before a federal magistrate. On July 3, 1989, the magistrate denied Valders's motion for summary judgment on its dispute with C-Way. That dispute was tried and resolved (adversely to Valders) on August 20, 1989. Valders filed a motion for reconsideration that was still pending at the time we heard oral argument in this case.
 
 
 3
 Selvick and its insurer, St. Paul,[5] intervened in the suit. Selvick claimed that Valders was liable for the damage done to the barge under theories of non-delegable duty in contract and the warranty of workmanlike performance in admiralty. In his July 3, 1989, order, the magistrate awarded Valders summary judgment on Selvick's claim based on the facts that Strauss was an independent contractor and that Selvick lacked privity with Valders.
 
 
 4
 Selvick appeals on the basis of 28 U.S.C. section 1292(a)(3), which establishes appellate jurisdiction over interlocutory orders finally determining the substantive rights and liabilities of parties to an admiralty case. Valders cross-appeals from the magistrate's denial of its summary judgment motion against C-Way.
 
 
 5
 1. APPELLATE JURISDICTION OVER THE CROSS-APPEAL
 
 
 6
 Selvick asserts its claim under the admiralty head of federal jurisdiction. U.S. Const., art. III, cl. 2; 28 U.S.C. Sec. 1333(1). Since the case involves an allegation of property damage to a vessel engaged in a traditional maritime activity (commerce), there is admiralty jurisdiction here. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Appellate courts generally lack jurisdiction over interlocutory orders rendered by district courts. However, 28 U.S.C. section 1292(a)(3) empowers us to hear "[i]nterlocutory decrees of [ ] district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." The magistrate's summary judgment in favor of Valders finally determined that Selvick lacked a right to recover compensation from Valders for the damage to its barge. The magistrate's order therefore determined the rights and liabilities of Selvick and Valders with regard to Selvick's claims, and we have jurisdiction over Selvick's appeal.
 
 
 7
 Valders's suit against C-Way, however, is not based on admiralty jurisdiction, but on federal question jurisdiction (derived from the Miller Act) and diversity jurisdiction. Valders rests its claim of appellate jurisdiction over the cross-appeal on 28 U.S.C. section 636(c)(3). That section provides that, in any case conducted by a United States magistrate at the parties' consent, "[u]pon entry of judgment ..., an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court." (Emphasis added.) As we have indicated, appellate jurisdiction over interlocutory orders is the exception rather than the rule. Since a denial of summary judgment is not a final judgment, Pacific Union Conference of Seventh-Day Adventists v. Marshall, 434 U.S. 1305, 1306, 98 S.Ct. 2, 3, 54 L.Ed.2d 17 (Rehnquist, Circuit Justice 1977), and Valders's cross-appeal does not fall within any category of appealable interlocutory orders listed in section 1292, we would ordinarily conclude at this point that there is no appellate jurisdiction over the cross-appeal.
 
 
 8
 Valders, however, argues that its right to contest certain matters addressed by the magistrate's pending final judgment will be prejudiced by our review at this time of Selvick's appeal in isolation. We read Valders's contention as an assertion that we may hear the cross-appeal under the doctrine of pendent appellate jurisdiction. As our cases, and those of other courts of appeals, have held, pendent appellate jurisdiction may be found only in a limited class of cases. E.g., People of State of Ill. ex rel. Hartigan v. Peters, 861 F.2d 164, 166 (7th Cir.1988); Patterson v. Portch, 853 F.2d 1399, 1403 (7th Cir.1988); see also Akerman v. Oryx Communications, Inc., 810 F.2d 336, 339 (2d Cir.1987) (pendent appellate jurisdiction doctrine should "rarely be used because of the danger of abuse."); Kershner v. Mazurkiewicz, 670 F.2d 440, 449 (3d Cir.1982) (en banc) (noting narrow scope of section 1292(a)).
 
 
 9
 We recently explained that pendent appellate jurisdiction will be found only "[w]hen an ordinarily unappealable interlocutory order is inextricably entwined with an appealable [interlocutory] order" and only if "there are compelling reasons for not deferring the appeal of the former order to the end of the lawsuit." Peters, 861 F.2d at 166. A close relationship between the unappealable order and the appealable order will not suffice: it must be practically indispensable that we address the merits of the unappealable order in order to resolve the properly-taken appeal.
 
 
 10
 In the present case, Valders alleges that we cannot resolve Selvick's appeal without passing on the substance of the cross-appeal. The cross-appeal essentially asserts that the magistrate incorrectly found that the Valders/4-X assignment agreement covered and included the 4-X/C-way purchase order. Selvick asserts a number of claims based on the purchase order. We must decide initially, therefore, whether we need determine the scope of the Valders/4-X assignment in order to settle Selvick's appeal.
 
 
 11
 Selvick raises two points on appeal. First, it challenges the magistrate's conclusion that Valders could not be held liable for a breach of the warranty of workmanlike performance because Selvick was not in privity with Valders in any contract. Second, Selvick argues that the magistrate incorrectly ruled that Valders did not owe Selvick a non-delegable contractual duty to load the stone with due care because it (Selvick) was a third-party beneficiary of Valders's contract with C-Way. Only Selvick's second contention would arguably require us to delve into the question of the scope of the Valders/4-X assignment. After reviewing the purchase order to determine whether Selvick was a third-party beneficiary of Valders and C-Way's contract, we could take one of three courses: (1) affirm the magistrate's grant of summary judgment against Selvick in favor of Valders; (2) reverse the magistrate's order with respect to Selvick's third-party beneficiary claim, but remand for further proceedings to determine the scope of the assignment; or (3) reverse the grant of summary judgment outright. Only the final course of action would prejudice Valders. Clearly, then, we may limit our review of Selvick's appeal to an inquiry whether, reading the purchase order in the light most favorable to Selvick, Valders and C-Way intended to make Selvick a third-party beneficiary of their contract. We may leave to the magistrate (and to the appeal, if any, from the magistrate's final judgment) the question whether Valders assumed the purchase order under the assignment from 4-X.
 
 
 12
 Because we are able to extricate the issues raised by Selvick's properly-taken interlocutory appeal from the matters raised by the cross-appeal, we have no pendent appellate jurisdiction over Valders's cross-appeal. We will, however, treat Valders's cross-appeal as preserving its right to pursue the matters that it raises in an appeal properly taken from the magistrate's eventual final judgment. The cross-appeal is accordingly dismissed without prejudice.
 
 II. SELVICK'S APPEAL
 
 13
 Selvick charges the magistrate with error in dismissing its claim that Strauss's negligence constituted a breach by Valders of the implied warranty of workmanlike performance. Alternatively, Selvick argues that it should be permitted to maintain its action against Valders on the basis of Selvick's standing as a third-party beneficiary and Valders's obligations as the holder of a non-delegable contractual duty. We apply the general maritime law to Selvick's claims. See East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864-65, 106 S.Ct. 2295, 2298-99, 90 L.Ed.2d 865 (1986) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.") (footnote omitted); see also T.J. Schoenbaum, Admiralty and Maritime Law Sec. 4-1 (1987).A. Selvick's Assertion of the Implied Warranty of Workmanlike Performance
 
 
 14
 Many courts have discussed the implied warranty of workmanlike performance. All have noted the warranty's roots in personal injury actions by longshoremen against ship owners who owed a non-delegable duty to provide a "seaworthy" vessel. A 1946 decision of the Supreme Court made ship owners strictly liable for injuries to longshoremen caused by the "unseaworthy" condition of their vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court relied on the warranty of workmanlike performance in an attempt to correct an inequity created by Sieracki. It was the stevedore in Ryan whose negligence in loading the ship had resulted in injury to one of the stevedore's employees. Consequently, the Court allowed the ship owner to bring an indemnity action against the stevedore based on the stevedore's breach of the warranty of workmanlike performance implicit in the stevedoring contract. Courts later rationalized the propriety of the Ryan indemnity as a means of shifting the risk to the stevedore, when the stevedore was in a better position than the ship owner to prevent accidents. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 171, 101 S.Ct. 1614, 1624, 68 L.Ed.2d 1 (1981); Maritime Overseas Corp. v. Northeast Petroleum Indus., 706 F.2d 349, 353 (1st Cir.1983); Miller Yacht Sales v. M.V. Vishva Shobha, 494 F.Supp. 1005, 1014 (S.D.N.Y.1980).
 
 
 15
 In 1972, Congress amended the Longshore and Harbor Workers' Compensation Act to provide an exclusive remedy for injuries incurred by covered employees. 33 U.S.C. Sec. 905(b). The amendment specifically provided that "[t]he liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." Id. It has been generally recognized that the amendment has obviated the original purpose of the workmanlike performance warranty. See generally T.J. Schoenbaum, supra, Sec. 4-6, at 135. However, as the Supreme Court noted in Scindia, the amendment "did not ... disturb the contractual undertaking of the stevedore nor the rightful expectation of the vessel that the stevedore nor the rightful expectation of the vessel that the stevedore would perform his task properly without supervision by the ship." 451 U.S. at 170, 101 S.Ct. at 1623.
 
 
 16
 The Fifth Circuit has attempted to elucidate the scope of the warranty in light of the 1972 amendment. In Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 93 (5th Cir.1981), Judge Rubin offered this explanation:
 
 
 17
 The Ryan doctrine thus includes two facets: an implied undertaking by a stevedore to render workmanlike performance and the stevedore's duty to indemnify the [ship] owner for liability arising out of breach of this duty.
 
 
 18
 Rather than apply indemnity principles, however, the Fifth Circuit chose instead to apportion liability according to each party's comparative fault. Id. at 93-94. Other courts have done likewise. Purnell v. Norned Shipping B.V., 801 F.2d 152 (3d Cir.1986), cert. denied sub nom. City of Wilmington v. Wilmington Stevedores, Inc., 480 U.S. 934, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987); Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 625-26 (2d Cir.), cert. denied sub nom. Maislin Transport of Delaware v. Farrell Lines, Inc., 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980).[6] Espousing the Fifth Circuit's approach, Professor Schoenbaum suggests that the 1972 amendment eliminated only the indemnity aspect of the Ryan holding. T.J. Schoenbaum, supra, Sec. 4-6, at 135-36. It may be that, in light of major developments in tort law, the warranty has outlived its usefulness. Some courts have concluded that, as the Fifth Circuit put it in Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100 (5th Cir. Unit A 1981), the doctrine is so "withered" that it should simply be interred or, at the very least, limited to its original scope. See also Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1256-57 (6th Cir.1988). We need not add our voice to this debate.
 
 
 19
 For, even assuming the continued vitality of the Ryan warranty, we do not think Selvick has stated a cognizable claim. Selvick is suing Valders for the damage to its barge; Selvick is not suing Strauss, the stevedore whose alleged negligence in loading the stone was the direct cause of the damage. In each of the cases cited by Selvick in support of its plea that the warranty be revived and applied here, the warranty ran against the stevedore, whom the court ordered to indemnify the ship owner or charterer. Indeed, these cases refer expressly to the stevedore's warranty of workmanlike performance. Crumady v. The J.H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Waterman Co. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Federal Commerce & Navigation Co. v. Calumet Harbor Terminals, Inc., 542 F.2d 437 (7th Cir.1976); F.J. Walker, Ltd. v. Motor Vessel "Lemon Core," 561 F.2d 1138 (5th Cir.1977); Stein Hall & Co. v. S.S. Concordia Viking, 494 F.2d 287 (2d Cir.1974); Federal Barge Lines, Inc. v. Granite City Steel, 608 F.Supp. 142 (E.D.Mo.1985), appeal dismissed, 774 F.2d 1169 (8th Cir.1985); Dravo Mechling Corp. v. Standard Terminals, Inc., 557 F.Supp. 1162 (W.D.Pa.1983), aff'd, 729 F.2d 1446 (3d Cir.1984); Mavirazon Compania Naviera, S.A. v. H.J. Baker & Bro., Inc., 494 F.Supp. 1023 (E.D.La.1980); see also Agrico, 664 F.2d 85 (5th Cir.1981); Salter Marine, Inc. v. Conti Carriers and Terminals, Inc., 677 F.2d 388 (4th Cir.1982). There is, of course, no apparent reason to limit the application of the warranty to stevedores; it could as easily apply to other sorts of marine contractors. See, e.g., Fairmont Shipping Corp. v. Chevron Int'l Oil Co., 511 F.2d 1252 (2d Cir.) (applying doctrine to oil supplier that subcontracted towing of barge into port for loading), cert. denied, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975). And this circuit has applied the warranty to cases involving damage solely to cargo, see Federal Commerce & Navigation, 542 F.2d at 441, so it seems logical that the doctrine should be available in claims against stevedores for damage to the vessel itself.
 
 
 20
 But the more the case deviates from the original Ryan scenario, it seems to us, the less justification there is to apply the warranty. As we have noted, the Ryan warranty was established to correct a particular inequity: specifically, its purpose was to allow a non-negligent ship owner to recoup from a negligent contractor damages the ship owner was forced to pay to the injured party. Thus, under Ryan, the party who actually caused the injury (and who was in the best position to prevent it) ultimately paid the price of its carelessness. We do not see how this purpose would be furthered by allowing Selvick to recover the costs of its damages from Valders, which merely hired Strauss to load the stone, as opposed to requiring Selvick to sue Strauss itself--as the alleged cause of the negligent damage.
 
 
 21
 We do not rely here on the privity of contract between the ship owner and the stevedore. Consequently, Selvick is not assisted by cases like Crumady v. The H.J. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), and Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). In both of those cases, the stevedore had no direct contract with the ship or its owner, but the stevedore did directly cause the injury, and it was the stevedore against which the ship owner sought indemnity. It is especially noteworthy that in Waterman, the ship owner sued the stevedore, not the consignee of the cargo who had hired the stevedore.
 
 
 22
 Selvick has also drawn our attention to a 1968 district court case--McDonough Construction Co. v. H.B. Fowler & Co., 281 F.Supp. 90 (E.D.La.1968). In McDonough, then-District Judge Rubin held that a supplier of steel pilings who contracted with a stevedore to load the pilings on a ship provided by the purchaser of the pilings could not escape liability to the ship's charterer for the stevedore's negligence. Since the passage of the 1972 amendment, however, the Fifth Circuit has adopted a narrow view of the warranty, and recent cases decided by that court cast doubt upon the precedential value of McDonough. E.g., Bosner S.A. v. Tug L.A. Barrios, 796 F.2d 776, 786 (5th Cir.1986) (emphasizing circuit's unwillingness to expand Ryan warranty beyond its original facts); Thibodeaux v. Texas E. Transmission Corp., 548 F.2d 581, 584 (5th Cir.1977) (warranty applies only if warrantor is doing something for the benefit of warrantee); Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1212 (5th Cir.1986) (quoting Thibodeaux ).[7]
 
 
 23
 Because we conclude that Selvick's suit against Valders exceeds the proper scope of the Ryan warranty, we need not decide at this juncture whether or in which cases the warranty retains its former vigor.
 
 B. Selvick's Third-Party Beneficiary Theory
 
 24
 Selvick contends that it was an intended beneficiary of the stone supply contract between Valders and C-Way. We disagree.
 
 
 25
 The Restatement (Second) of Contracts, section 302 (1981), gives the following description of intended beneficiaries:
 
 
 26
 (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
 
 
 27
 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 
 
 28
 (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
 
 
 29
 Only intended beneficiaries of a contract between others may enforce against the promisor a duty or right under the contract. Id., Sec. 304.[8] We believe that the benefit Selvick derived from Valders's contract with C-Way (assuming such a contract existed) was too remote to place Selvick within the category of intended beneficiaries. Selvick has presented us with no evidence that C-Way, when it elicited a promise from Valders to supply stone, had any desire or motivation to benefit Selvick.[9] C-Way hired Selvick's barge for its own convenience, not as a means to fulfill any preexisting obligation to Selvick or to benefit Selvick economically. Selvick clearly was only an incidental beneficiary of the Valders/C-Way stone supply contract.
 
 
 30
 Relying principally on Crumady and Waterman, Selvick urges us to recognize that "[t]he vessel owner has been declared to be a third-party beneficiary of the agreement for the loading of cargo aboard his vessel." Selvick's Brief at 19. Whether someone is an intended beneficiary of a contract between others always depends upon the particular contract and the particular circumstances. We do not understand the Supreme Court's decisions in Crumady and Waterman to override this basic principle of contract law. Crumady and Waterman were decided on the basis of the stevedore's warranty of workmanlike performance, which was held to apply no matter who had engaged the negligent stevedore. Yet in neither of these cases did the vessel or its owner or charterer initiate a suit against the party that had hired the stevedore: in both cases, suit was brought against the stevedore itself. In our view, therefore, the Court was not asked, nor did it undertake, to reach the question whether one who engages the negligent stevedore may be held liable for damage to the vessel.[10]
 
 
 31
 Selvick also presses the theory that Valders should not escape liability for the damage to the barge simply because it subcontracted the loading of the stone to Strauss. Again, Selvick cites the Restatement, and again to no avail. Restatement section 318(3) states: "Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor or the person delegated discharges any duty or liability of the delegating obligor." See also 4 A.L. Corbin, supra, Sec. 866. But we have already made clear that Valders contracted with C-Way, not with Selvick. Selvick could sue Valders on the nondelegability of contractual duty theory only if it were an obligee or intended beneficiary of the Valders/C-Way contract. We have held that it was neither. Valders is accountable, therefore, only to C-Way for any breach of contract caused by Strauss's alleged negligence.
 
 
 32
 Our conclusion is not contradicted by the cases cited by Selvick on this point. McDonough Construction Co. v. H.B. Fowler & Co., 281 F.Supp. 90 (E.D.La.1968), and Brooks v. Hayes, 133 Wis.2d 228, 395 N.W.2d 167 (1986), both involved situations in which the assignor of the obligation had a contract with the party who brought the suit. Selvick stresses the factual similarity between this case and McDonough, where the owner and charterer of a barge brought suit against a supplier who was contractually obligated to the charterer to provide for the loading of steel pilings. In that case, of course, the supplier had a contract directly with the barge charterer; the barge charterer was the obligee of the supplier's promise to load the pilings.[11] Similarly in Brooks, the homeowners and their insurer sued a general contractor for the deficient performance of a subcontractor. The homeowners were, naturally, the obligees of a contract with the general contractor. Thus, Selvick is not assisted by the outcomes of these two cases.
 
 III. CONCLUSION
 
 33
 The theories Selvick has mustered in its action for damages against Valders might properly form the basis of a suit against Strauss. But neither the warranty of workmanlike performance in admiralty nor common law contract principles can support Selvick's claim against Valders. The magistrate's order granting summary judgment against Selvick in favor of Valders is therefore AFFIRMED. Valders's cross-appeal from the order denying it summary judgment against C-Way is DISMISSED for lack of appellate jurisdiction.
 
 
 
 [1]
 Valders denies that the 4-X assignment encompassed the C-Way purchase order
 
 
 [2]
 Selvick was not the owner of the barge, but rather its bareboat charterer. Since a bareboat charter involves the complete transfer of possession from the owner to the charterer, it is the virtual equivalent of ownership. See Agrico Chemical Co. v. M/V Ben W. Martin, 664 F.2d 85, 91 (5th Cir.1981), and cases cited there. For purposes of this suit, we treat Selvick as the owner of the barge, but we, of course, express no opinion as to any rights the actual owner may have against any of the parties to this appeal
 
 
 [3]
 Selvick claimed in its complaint that the barge incurred $98,732.00 in damages. Selvick received $42,142.28 from its insurer--St. Paul. C-Way and Selvick entered into a settlement agreement that obligated C-Way to contribute $36,142.28 towards the cost of repair, but C-Way has paid only $6,000.00 so far. Selvick seeks to recover $40,229.72 from Valders
 
 
 [4]
 To be precise, C-Way has withheld $68,172.94 from Valders
 
 
 [5]
 St. Paul is not a party to this appeal
 
 
 [6]
 The Supreme Court has authorized the utilization of comparative fault principles in admiralty cases. United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)
 
 
 [7]
 To the extent that McDonough addresses ordinary contractual principles relating to third-party beneficiaries, we discuss it below
 
 
 [8]
 Professor Corbin similarly defines intended beneficiaries:
 A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor in satisfaction of that obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.
 
 
 [4]
 A.L. Corbin, Corbin on Contracts Sec. 776, at 18 (1951)
 
 
 [9]
 In reply, Selvick refers to paragraphs 4 and 15 of the Valders/C-Way purchase order in support of its third-party beneficiary theory. (The terms of the purchase order appear in C-Way's App. at A-12.) Paragraph 4 relates to warranties owed by Valders to C-Way, while paragraph 15 establishes C-Way's right of indemnity for actions by third parties against C-Way arising from Valders's performance of its contractual obligations. The terms reflect no intent by C-Way to create warranty or indemnity rights in third parties: C-Way intended to protect only itself by these provisions. In contrast, paragraph 18 requires a subcontractor who is performing work or services for C-Way to procure, inter alia, property damage insurance totalling $100,000. This term arguably creates an enforceable right in certain third parties. Paragraph 18, of course, does not apply to suppliers of goods like Valders. Thus, we can discover no provision in the purchase order, even assuming it is a relevant contract between Valders and C-Way, that creates any enforceable right in Selvick
 
 
 [10]
 Selvick does not allege that Valders negligently selected Strauss to perform the stevedoring. Such a claim would not, in any event, be based in contract, but rather in tort, Restatement (Second) of Torts Sec. 411 (1965), and Selvick repeatedly denies that it is grounding its claim against Valders on any tort theory
 
 
 [11]
 The court also allowed the owner of the barge to join the action as a plaintiff in its own right as a third-party beneficiary of the contract between the charterer and the supplier and between the supplier and the stevedore. The court rested this conclusion at least in part on the Ryan warranty. We note that the McDonough case was decided in 1968--before the amendment to the Longshore and Harbor Workers' Compensation Act--and that the same Judge Rubin who authored McDonough as a district judge has stated as a judge of the Fifth Circuit his concurrence in the view that the Ryan warranty is a "withered" doctrine that should not be extended. Agrico, 664 F.2d at 93. Thus, the precedential value of McDonough appears questionable