# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2940

ERNO KALMAN ABELESZ *et al.*,*

Plaintiffs-Appellees,

*v.*

ERSTE GROUP BANK AG,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-01884—**Samuel Der-Yeghiayan**, *Judge.*

No. 11-2946

IN RE:

ERSTE GROUP BANK AG,

Petitioner.

---

* This appeal had been captioned "*Holocaust Victims of Bank Theft v. Erste Group Bank*." We have reformed the caption to reflect the first named plaintiff. Federal Rule of Civil Procedure 10(a) requires pleadings to name parties, not to presume the merits of the plaintiffs' claims, no matter how compelling they may be.

Petition for Writ of Mandamus
to the Northern District of Illinois, Eastern Division.
No. 1:10-cv-01884—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED JANUARY 11, 2012—DECIDED AUGUST 22, 2012

Before KANNE, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.*   A group of Holocaust survivors and heirs of other Holocaust victims filed suit against several banks alleging the banks participated in expropriating property from Hungarian Jews during the Holocaust. This case, and a parallel case against the Hungarian national railway, have produced nine separate pending appeals and mandamus petitions. In this opinion, we address the plaintiffs' claims against defendant Erste Group Bank AG ("Erste"), which is a privately owned Austrian bank. In separate opinions released today, we address plaintiffs' claims against two other private banks, the Hungarian national bank, and the Hungarian national railway.[1]

Invoking subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(a), the Alien Tort Statute, 28 U.S.C. § 1350, and federal question jurisdiction, 28 U.S.C. § 1331, plaintiffs allege six causes

---

[1] See *Abelesz v. OTP Bank*, ___ F.3d ___ (7th Cir. 2012); *Abelesz v. Magyar Nemzeti Bank*, ___ F.3d ___ (7th Cir. 2012).

of action: genocide, aiding and abetting genocide, bailment, conversion, constructive trust, and accounting. Plaintiffs seek to have their case certified as a class action and ask that each defendant bank be held jointly and severally responsible for damages of approximately $75 billion. The defendant banks moved to dismiss on many grounds, including lack of subject-matter jurisdiction and lack of personal jurisdiction. The district court denied all motions to dismiss, motions to reconsider, and motions for certification of interlocutory appeals under 28 U.S.C. § 1292(b). *Holocaust Victims of Bank Theft v. Magyar Nemzeti Bank*, 807 F. Supp. 2d 689 (N.D. Ill. 2011) (denying motions to dismiss); 807 F. Supp. 2d 699 (N.D. Ill. 2011) (denying motions for reconsideration, clarification, and certification of interlocutory appeal).

Those denials pose some challenging problems of appellate jurisdiction, as we explain in *Abelesz v. OTP Bank*, ___ F.3d at ___. The appellate jurisdiction story in this case begins with defendant Magyar Nemzeti Bank ("MNB"), the Hungarian national bank, which moved to dismiss based on a defense of sovereign immunity under the FSIA, 28 U.S.C. § 1604. The district court denied MNB's motion. MNB has appealed that denial, and as we explain in *Abelesz v. Magyar Nemzeti Bank*, it is well established that a denial of sovereign immunity under the FSIA is a collateral order subject to interlocutory appeal. ___ F.3d at ___. From that one sound basis for appellate jurisdiction, MNB has asked us to exercise pendent appellate jurisdiction over the other arguments it made for dismissal. And in turn, appellant Erste, like the other private banks, OTP

and MKB, seeks here to stretch the narrow doctrine of pendent appellate jurisdiction to include its own appeal and the separate issues it seeks to raise. Erste, like MKB and OTP, also filed a petition for writ of mandamus, which it asks that we consider in the event that appellate jurisdiction is lacking.

Erste's appeal must be dismissed for lack of appellate jurisdiction without reaching the merits of the issues it raises.[2] Erste's petition for writ of mandamus is also denied because, while we recognize the extraordinary nature of this litigation, Erste has not demonstrated a clear and indisputable right to relief on par with MKB's and OTP's personal jurisdiction defense.

I. *Appellate Jurisdiction*

Erste seeks review of the district court's denial of its motion to dismiss. As a general rule, the district court

---

[2] While we express no opinion on the merits of plaintiffs' claims under the Alien Tort Statute, we note for completeness that the Supreme Court is currently considering two aspects of the scope of the ATS that may be relevant to plaintiffs' claims here: (1) whether corporations are subject to tort liability for violations of the law of nations, and (2) whether and under what circumstances the ATS allows U.S. courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States. See *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010), *cert. granted*, 80 U.S.L.W. 3237 (U.S. Oct. 17, 2011) (No. 10-1491), *calendared for reargument*, 80 U.S.L.W. 3506 (Mar. 5, 2012).

must issue a final order before an appellate court has jurisdiction to entertain an appeal. See 28 U.S.C. § 1291. Erste advances two arguments for hearing its appeal. First, it argues that the district court's denial of its motion to dismiss based on the political question doctrine can be appealed now under the collateral order doctrine. Second, Erste argues, like all three of its co-defendants, that we can exercise pendent appellate jurisdiction over other issues because its appeal is "inextricably inter-twined" with the appeals of its co-defendants. Neither argument provides us with jurisdiction over Erste's appeal.

A. *Collateral Order Doctrine*

Erste, like MKB, urges that the district court's rejection of its political question defense, in this case based on the United States's involvement in the creation of the Austrian General Settlement Fund ("GSF"), is a collateral order that can be appealed immediately. This argument is based on the U.S. government's efforts to "provide some measure of justice to the victims of the Holocaust, and to do so in their remaining lifetimes." Stipulated J.A. 49 (Statement of Interest filed by U.S. government). The United States has been party to two international settlements that have provided approximately $8 billion for the benefit of victims of the Holocaust. One of these settlements, the GSF, was established by the Austrian federal government and Austrian companies to make payments for Holocaust-era claims against Austria and Austrian companies, excluding claims for

restitution of works of art. To facilitate the creation and funding of the GSF, the United States pledged to help achieve "legal peace" for Austrian companies with respect to Nazi-era claims in U.S. courts. The United States government, based on its participation in the GSF, filed in the district court a Statement of Interest pursuant to 28 U.S.C. § 517 urging dismissal of the claims against Erste "on any valid legal ground(s)." *Id.* at 48. The government's Statement of Interest did not argue for dismissal on any specific basis.

In its opinion denying Erste's motions for reconsideration and certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the district court stated that "based on the facts of this case at this juncture, there remain questions as to whether the Government's Statement of Interest is applicable and as to whether Plaintiffs are eligible for the funds referenced in the Statement of Interest." 807 F. Supp. 2d at 706. Erste argues that the district court misinterpreted the Statement of Interest, creating a new precondition to dismissal when the filing of the Statement of Interest should have been sufficient on its own to warrant dismissal on political question grounds. Resolution of this political question issue is separate from the merits and not effectively reviewable on appeal from final judgment, says Erste, since further litigation would undermine the "legal peace" offered to Austrian corporations like Erste in exchange for their participation in the GSF.

An immediately appealable collateral order is one that (1) conclusively determines the disputed question; (2) resolves important issues separate from the merits;

and (3) is effectively unreviewable on appeal from a final judgment. *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009). As we note in our analysis of MKB's parallel argument in *Abelesz v. OTP Bank*, ___ F.3d at ___, the collateral order doctrine is a narrow exception to "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered . . . ." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (internal citation omitted); see also *Will v. Hallock*, 546 U.S. 345, 350 (2006) ("we have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope"). The court must consider the entire category of similar cases to determine whether applying the collateral order doctrine under § 1291 is appropriate. See *Mohawk Industries*, 130 S. Ct. at 605.

In applying these teachings, the D.C. Circuit determined that the denial of a motion to dismiss on political question grounds was not an immediately appealable collateral order, notwithstanding the fact that the first two requirements for invoking the collateral order doctrine were satisfied. *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 349 (D.C. Cir. 2007). The D.C. Circuit took to heart the Supreme Court's admonition that "we have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership." *Will*, 546 U.S. at 350; see also *Doe*, 473 F.3d at 349. The line between those orders that are and are not appealable as collateral orders probably owes more to history than to

precise logical consistency, but the line has been drawn in precedents that we must respect and follow as best we can. Erste has not directed us to, and we have not found, any case in which a federal appeals court held that denial of a motion to dismiss on political question grounds was immediately appealable as a collateral order. Permitting an appeal from the denial of a motion to dismiss based on political question grounds would substantially expand the scope of the collateral order doctrine. We follow the D.C. Circuit on this question and hold that the collateral order doctrine does not provide appellate jurisdiction over the denial of the motion to dismiss based on Erste's political question defense. *Doe*, 473 F.3d at 353.[3]

---

[3] Our determination that we lack appellate jurisdiction is not based on the fact that Erste may have another chance to present its political question argument in a summary judgment motion or at trial, as urged by plaintiffs. That argument by plaintiffs misunderstands the collateral order doctrine. For example, a defendant whose motion to dismiss a claim under 42 U.S.C. § 1983 on grounds of qualified immunity is denied often can appeal under the collateral order doctrine even though the same issue could be raised again later in the district court. We hold only that a denial of a motion to dismiss on political question grounds is not among the "small class" of orders that are collaterally appealable. See *Will*, 546 U.S. at 350-55 (holding that refusal to apply Federal Tort Claims Act's judgment bar was not appealable as collateral order).

B. *Pendent Appellate Jurisdiction*

As noted, defendant MNB, the Hungarian national bank, has appealed the district court's denial of its sovereign immunity defense under the FSIA. In its own appeal, MNB raises other issues that it argues are pendent to the FSIA immunity issue. We clearly have jurisdiction over MNB's appeal of the denial of sovereign immunity and address the merits of that defense in a separate opinion. From this one solid foothold on appellate jurisdiction, Erste, like MKB and OTP, argues that this court should exercise pendent appellate jurisdiction over its own appeal because it is "inextricably intertwined" with the appeals of its co-defendants.

As we note in *Abelesz v. OTP Bank*, ___ F.3d at ___, pendent appellate jurisdiction is also a narrow doctrine, one that allows an appellate court "to review an otherwise unappealable interlocutory order if it is 'inextricably intertwined with an appealable one.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010), quoting *Montano v. City of Chicago*, 375 F.3d 593, 599 (7th Cir. 2004). This room for the "inextricably intertwined" use of pendent appellate jurisdiction should not be stretched to appeal normally unappealable interlocutory orders that happen to be related — even closely related — to the appealable order. *People of State of Ill. ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir. 1988); see also *U.S. for Use of Valders Stone & Marble, Inc. v. C-Way Const. Co.*, 909 F.2d 259, 262 (7th Cir. 1990) ("A close relationship between

the unappealable order and the appealable order will not suffice: it must be *practically indispensable* that we address the merits of the unappealable order *in order to resolve the properly-taken appeal.*") (emphasis added). This is so because resolving appeals from non-final decisions is generally incompatible with the final judgment rule embodied in 28 U.S.C. § 1291. *McCarter v. Retirement Plan for Dist. Managers of American Family Ins. Grp.*, 540 F.3d 649, 653 (7th Cir. 2008).

Given the narrow scope of the doctrine, pendent appellate jurisdiction is not available to Erste here. As we decide in *Abelesz v. Magyar Nemzeti Bank*, we have appellate jurisdiction over MNB's appeal of the district court's denial of sovereign immunity, but we decline to exercise pendent appellate jurisdiction over the other issues that MNB itself seeks to raise. ___ F.3d at ___. Erste, like MKB and OTP, enters the picture by arguing that its appeal is inextricably intertwined with those of the other defendants, especially MNB. In support, Erste notes that (1) the complaint does not differentiate among the defendants, (2) defendants' motions to dismiss incorporated one another's grounds and arguments, (3) the district court addressed and rejected defendants' motions to dismiss in one opinion, and (4) defendants' briefs to this court once again incorporate one another's grounds and arguments. Erste concludes by arguing that resolution of all of the pending appeals simultaneously will promote judicial economy.

Erste's reliance on judicial economy to justify pendent party appellate jurisdiction is misplaced. The Supreme

Court has rejected this justification and essentially barred any pendent party appellate jurisdiction. See *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995) ("[T]here is no 'pendent party' appellate jurisdiction of the kind the Eleventh Circuit purported to exercise."); *McCarter*, 540 F.3d at 653 ("*Swint* itself held that a court of appeals had erred in invoking pendent appellate jurisdiction, because 'judicial economy' is no warrant for disregarding the statutory final-decision rule.").[4]

Even if we were dealing with related issues raised by one appellant, the varied issues raised do not concern "the same single issue." See *Research Automation*, 626 F.3d at 977 ("Both the denial of the injunction and the district court's transfer order concern the same single issue: whether this case should be litigated in Illinois or in Virginia."). Nor are they "the head and tail of the same coin." *Hartigan*, 861 F.2d at 166. While the issues that Erste seeks to appeal are closely related to the issues its co-defendants seek to appeal, that relationship does not help because we do not have jurisdiction over those issues, either. The pivotal point is that Erste's

[4] Erste points out that we exercised pendent party appellate jurisdiction over the malpractice claim of one litigant that was "entwined" with an indemnity claim of another litigant properly before the court because doing so served the broader purposes of efficiency and consistent resolution of the case. *Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001). We have since noted that *Swint* rejected "judicial economy" as an appropriate basis for an appellate court to exercise pendent jurisdiction. *McCarter*, 540 F.3d at 653.

issues are not so "inextricably intertwined" with MNB's sovereign immunity defense, which we have jurisdiction to consider, as to make it "practically indispensable" that we address their merits at the same time. See *Swint*, 514 U.S. at 51; *Valders Stone & Marble*, 909 F.2d at 262. Exercising pendent appellate jurisdiction over Erste's appeal would not be consistent with the statutes and case law establishing the final-judgment rule.

## II. *Mandamus Jurisdiction*

Without appellate jurisdiction over the issues that Erste seeks to raise in No. 11-2940, that appeal must be dismissed. After objections were raised to appellate jurisdiction, Erste also filed a petition for a writ of mandamus to compel the district court to dismiss the claims against it. As a general rule, appellate courts are not in the business of reviewing routine denials of motions to dismiss — not by using pendent appellate jurisdiction, not by using the collateral order doctrine, and certainly not by issuing a writ of mandamus. The final judgment rule exists to help avoid piecemeal litigation and encroachment on the special role district judges play in managing ongoing litigation. See *Mohawk Industries*, 130 S. Ct. at 605. Furthermore, until a case is over, litigants do not know whether an individual error actually matters, and appellate courts usually benefit from having an entire record in front of them.

Nevertheless, this court is authorized to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a). Mandamus is a "drastic remedy traditionally

used to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so." *United States v. Lapi*, 458 F.3d 555, 560-61 (7th Cir. 2006); see also *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) ("Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy."). Three conditions must be satisfied for the writ to issue. First, the party seeking the writ must demonstrate that the challenged order is not effectively reviewable at the end of the case, that is, without the writ it will suffer irreparable harm. Second the party seeking the writ must demonstrate a clear right to the writ. Third, the issuing court must be satisfied that issuing the writ is otherwise appropriate. See *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004); *In re Sandahl*, 980 F.2d 1118, 1119 (7th Cir. 1992) ("[T]he petitioner must show *irreparable* harm (or, what amounts to the same thing, the lack of an adequate remedy by way of direct appeal or otherwise) and a *clear* right to the relief sought."). Although these demanding hurdles "are not insuperable," see *Cheney* 542 U.S. at 381 (granting writ), we conclude that this exacting standard is not satisfied here with respect to the district court's denial of Erste's motion to dismiss on political question grounds.

As we acknowledge in *Abelesz v. OTP Bank*, the nature of this litigation is extraordinary, given its astronomical financial stakes and appreciable foreign policy dimensions. ___ F.3d at ___. We also are aware of the importance of the case, at many levels, to the plaintiffs.

In granting writs to MKB and OTP, however, we note that it is the confluence of these specific factors, together with the crystal clarity of the personal jurisdiction issue, that makes granting writs of mandamus appropriate. In Erste's case, we can assume that the same financial stakes may present the same pressure to settle if a class is certified, meaning the district court's order might not be effectively reviewable at the end of the case. Such pressure is often present in class actions and other big cases, however, and by itself does not warrant issuance of a writ of mandamus. The problem for Erste is that it has not shown a similarly clear and indisputable right to the issuance of the writ.

Erste's petition for a writ of mandamus seems to be based on the same political question doctrine argument it asked us to review under the collateral order doctrine, but it is a little foggy on exactly why Erste has a "clear and indisputable right" to the writ. Erste's petition makes two related arguments. The first is that the district court abused its discretion by determining that the U.S. government's Statement of Interest would apply to Erste and call for dismissal only if the plaintiffs in this action are eligible for compensation under the Austrian settlement fund, the GSF. Second, Erste contends that the district court usurped the province of the executive branch of the U.S. government by declining to defer to the Statement of Interest and refusing to dismiss the claims against Erste.

In its opinion denying Erste's motions for reconsideration and certification of an interlocutory appeal pur-

suant to 28 U.S.C. § 1292(b), the district court stated that "based on the facts of this case at this juncture, there remain questions as to whether the Government's Statement of Interest is applicable and as to whether Plaintiffs are eligible for the funds referenced in the Statement of Interest." 807 F. Supp. 2d at 706. In so ruling, Erste argues, the district court misinterpreted the Statement of Interest and created a new condition for dismissal when the filing of the Statement of Interest should have been sufficient on its own to warrant dismissal under the political question doctrine. Erste asserts it was precisely such an attempt by a district court to "renegotiate" the terms of the similar German Foundation agreement to afford Holocaust victims protections not provided thereunder that led the Second Circuit to issue a writ of mandamus in *In re Austrian and German Holocaust Litigation*, 250 F.3d 156 (2d Cir. 2001).[5]

In that case, all but one of the named plaintiffs in a putative class action moved in the district court for an order pursuant to Federal Rule of Civil Procedure 41(a) allowing them to dismiss their claims against the German bank defendants voluntarily and

---

[5] Erste also argues that the Second Circuit found that the district court had "usurped power" by requiring "the German legislature to make a finding of legal peace and to do so before its summer recess." 250 F.3d at 164. The Second Circuit did find that the district court had "usurped power," but from the German legislature, not from the executive branch of the U.S. government.

with prejudice, but without prejudice to the rights of any absent members of the putative class to assert their own claims in any forum. 250 F.3d at 159. As in this case, the U.S. government filed a Statement of Interest urging dismissal. Despite the motions for voluntary dismissal by plaintiffs, and without objection by the defendants, the district court refused to dismiss the moving plaintiffs' claims. See *id*. at 159-60. After receiving a motion for reconsideration, the district court dismissed the case with two stipulations that were at the heart of plaintiffs' petition for a writ of mandamus. The Second Circuit noted that it is "beyond the authority of the courts to interfere with the Executive Branch's foreign policy judgments." *Id.* at 164. Erste argues that the district court's "similar attempt" to condition Erste's dismissal on whether the plaintiffs can be compensated by the Austrian GSF is "similarly well beyond the bounds of the District Court's authority."

The Second Circuit mentioned the executive branch's foreign policy interests, but did so in a discussion of the separation of powers. 250 F.3d 163-64. It based its decision to issue a writ of mandamus not on the U.S. executive branch's foreign policy interests, but rather on two ways in which the district court order interfered with the autonomy of the German legislature. First, the district court seemed to be requiring the German legislature to make a finding of "legal peace" and to do so

before its summer recess. *Id*. at 164.[6] As the Second Circuit rightly noted, "It would be beyond the authority of the court so to trammel on the prerogatives of a legislature in the United States. Much less does the court have the power to require such actions of the legislature of a foreign sovereign." 250 F.3d at 164. Second, the district court had stated that the plaintiffs could file a Rule 60(b) motion to vacate the dismissal order if the criteria of the German Foundation were not revised as contemplated in a declaration made by an attorney involved in both the litigation and the negotiation of the U.S.-German agreement. The Second Circuit noted that even if the declaration gave such an assurance (which the court found it did not), such a provision took the court well beyond the bounds of its authority because the criteria of the German Foundation were governed under German law. The district court's language appeared to indicate that if the German legislature failed to change German law, the district court could

---

[6] Under the terms of the agreement creating the German Foundation, no funds could be distributed to claimants until the attainment of "legal peace," *i.e.*, the final dismissal of pending Holocaust-related litigation against German companies in the U.S. courts and a commitment by the United States to file in any pending or future Holocaust litigation against Germany companies in a U.S. court a "Statement of Interest" informing that court that the foreign policy interests of the United States call for the German Foundation to be recognized as the exclusive forum for the resolution of such claims. See 250 F.3d at 159.

or would vacate the dismissals. As the Second Circuit again noted, "It is not the office of the court, however, to decide what legislation should be enacted; and the refusal of a legislature, within the scope of its own authority, to enact or change a law is not a valid ground for vacatur of a final judgment." *Id.* at 165. The district court's seeming instructions to the German legislature were the judicial usurpation of power justifying the extraordinary remedy of mandamus, not its purported "renegotiation" of the German Foundation agreement, as Erste urges.

Erste also argues that the U.S. government's Statement of Interest itself unconditionally requires immediate dismissal. Erste supports this argument by citing *In re Assicurazioni Generali, S.p.A.*, 592 F.3d 113, 119-20 (2d Cir. 2010); *Whiteman v. Dorotheum GmbH & Co KG*, 431 F.3d 57, 59 (2d Cir. 2005); *In re Nazi Era Cases Against German Defendants Litigation*, 129 F. Supp. 2d 370, 383, 386 (D.N.J. 2001); and *Hwang Geum Joo v. Japan*, 413 F.3d 45, 52 (D.C. Cir. 2005). We disagree.

First, Erste simply mischaracterizes the Statement of Interest. The Statement of Interest does not urge dismissal, full stop. Rather, it says that the United States recommends dismissal of the claims against Erste *on any valid legal grounds*. The Statement of Interest also says that "the United States takes no position on the merits of the underlying legal claims or arguments advanced by plaintiffs or by defendants . . . ." Stipulated J.A. 48. Furthermore, "The United States *does not suggest that its policy interests concerning the Fund in themselves provide*

*an independent legal basis for dismissal*, but will reinforce the point that U.S. policy interests favor dismissal on any valid legal ground." Def.-Appellant's Separate Addendum 316 (emphasis added). The Supplemental Statement of Interest, of which Erste urges us to take judicial notice, reiterates that position: "In sum, *while the United States does not take a legal position on any claims or defenses before the Court*, the United States reiterates that it would be in the foreign policy interests of the United States for claims agains [Erste] to be dismissed *on any valid legal ground*." Supp. Statement of Interest 3, Sept. 30, 2011, ECF No. 35-2 (emphasis added). The Statement of Interest deserves the respect of the district court and this court, but the Statement of Interest does not itself compel dismissal of the claims against Erste.

Neither *Whiteman* nor *Hwang Geum Joo* demonstrates that Erste has a clear right to the issuance of a writ of mandamus in this case. In *Whiteman*, when the government first presented its Statement of Interest to the district court, it did not urge the district court to rest on the foreign policy interest of the United States as an independent legal basis for dismissal. When the case reached the Second Circuit, however, the United States no longer offered that qualification and instead asserted that deference to the views of the executive branch on the United States's foreign policy interests supported dismissal of the case. The Second Circuit found that deference was appropriate "[i]n the circumstances presented in this case . . . ." 431 F.3d at 69. That is not the situation in the present case. Rather, the Statement of Interest specifically stated that it was *not* suggesting

that the policy interests in themselves provide an independent legal basis for dismissal.

In *Hwang Geum Joo*, women from China, Taiwan, South Korea, and the Philippines sued Japan alleging they were abducted and forced into sexual slavery by the Japanese Army prior to and during World War II. The D.C. Circuit noted that in order to adjudicate plaintiffs' claims, the court would have to resolve plaintiffs' dispute with Japan over the meaning of the treaties between Japan and Taiwan, South Korea, and China. 413 F.3d at 52. The question whether the war-related claims of foreign nationals were extinguished when the governments of their countries entered into peace treaties with Japan was one that concerned the United States only with respect to her foreign relations. The court thus determined that the case was nonjusticiable under the political question doctrine. *Id.* at 52-53.

Furthermore, the fact that the Second Circuit and the U.S. District Court for the District of New Jersey have dismissed cases where the government submitted a Statement of Interest also does not demonstrate that Erste has a *clear and indisputable right* to mandamus in this case. See *Cheney*, 542 U.S. at 381 (petitioner seeking writ of mandamus must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable). These cases provide strong support for Erste's political question argument, but other circuits have found the political question doctrine did not apply in similar circumstances. See, *e.g.*, *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1235-41 (11th Cir. 2004) (holding

that political question doctrine did not apply, despite existence of German Foundation Agreement, but that abstention under international comity doctrine was appropriate). The district court may very well be wrong on the political question issue, and that may be sufficient for Erste to obtain a reversal on direct appeal. We express no view on the question except to say that the answer is not so clear that we should depart from orderly appellate practice, which requires a final judgment, and issue the extraordinary writ of mandamus. To issue a writ of mandamus under such circumstances "would undermine the settled limitations upon the power of an appellate court to review interlocutory orders." *Will v. United States*, 389 U.S. 90, 98 n.6 (1967); *In re Sandahl*, 980 F.2d at 1120 ("Mandamus, in contrast [to a collateral-order appeal], is a discretionary writ; and the standard of review is narrower than in an ordinary appeal.").

Finally, Erste makes much of the fact that plaintiffs' complaint alleges Holocaust-era wrongdoing by *Hungarian* banks while it is an *Austrian* bank, covered by the U.S.-Austrian Agreement. Erste is a defendant in this litigation, however, because in 2003 it acquired the Hungarian bank that, according to the complaint, had tainted assets. On this point Erste makes two arguments. First, Erste is the defendant and therefore, since Erste claims an entitlement to legal peace under the U.S.-Austrian agreements, we should not reach the issue of the subsidiary at all. Second, Erste argues that the U.S.-Austrian agreements are different from the U.S.-German Agreement in an important way. The U.S.-German

agreement defines who is a German subsidiary of a German company in terms of whether the acquisition had been completed as of the effective date of the U.S.-German agreement. Austria, however, negotiated different language so that the U.S.-Austrian agreements define "Austrian companies" to include "[e]nterprises situated outside the borders of the present-day Republic of Austria in which Austrian enterprises . . . *at any given time*, had or have a direct or indirect financial participation of at least 25 percent." Supp. Statement of Interest n.1, Sept. 30, 2011, ECF No. 35-2, quoting U.S.-Austrian Agreement (alterations and emphasis by United States). This definition, Erste argues, is not tied to the date of the creation of the General Settlement Fund. Based on this definition, Erste argues that the legal peace that it claims it is entitled to also extends to its Hungarian subsidiary.

In oral argument we asked if Erste's position is that Austrian banks and other corporations that participated in the Agreement and the Fund are in essence able to "vaccinate" entities that face Holocaust liabilities in other countries by acquiring them. Erste agreed with this assessment, stating that "the issue has been resolved, for better or worse, by an executive agreement." This vaccination theory is extraordinary. Followed to its logical conclusion, it would permit a covered Austrian entity to approach a foreign entity that found itself facing Holocaust-era claims in a U.S. court, acquire that foreign entity, and then assert that the U.S.-Austrian agreement guarantees that foreign entity legal peace. To be convinced that this is in fact what the U.S. govern-

ment thinks the U.S.-Austrian agreements provide, we would require a clearer and more persuasive statement than a conclusory and ambiguous footnote in a supplemental Statement of Interest filed in an unrelated case.

## *Conclusion*

Because we lack appellate jurisdiction under either the collateral order doctrine or pendent appellate jurisdiction, Erste's appeal in No. 11-2940 is DISMISSED. Because Erste has failed to demonstrate that it has a clear and indisputable right to the issuance of a writ of mandamus, its petition for a writ of mandamus in No. 11-2946 is DENIED.